Your Honors, I'm David Hardy. I represent Randolph Rodman, appellant in this case. I propose to deal with the conspiracy issue first, then the mail fraud issue raised by the court, and then entrapment by estoppel. If there's any remaining time, I'll cover the remaining issues. Have you and your colleague figured out how you're going to split up the time? Yes, Your Honor, 13 and 7. Great. Mr. Hardy. May it please the Court, I thought I would start off by just explaining what we're here about. I'm sorry, Your Honor, a bit on the tall side. What we're here about basically boils down to the Browning M1919 receiver, which is esoteric enough. I did prepare a thing so that we can familiarize ourselves with the issues. This would represent, and I say represent because I had to get it through security, a Browning M1919 receiver. Is that an exhibit? No, Your Honor. This is just for show? Yes, Your Honor. It's a highly technical show. When you take basically the receiver is made out of a metal frame onto which you fasten side plates. Now, normally we would say, looking at it, that this frame, by the ATF regulations, is the receiver. The regulations say the receiver is that which houses the firing mechanism, which would go in here, and is perforated or the barrel attaches at the front end. But ATF, by understanding, shall we say, it's not a regulation, it's never published for the good of the public, has decided that one component, this right side plate, which bears the serial number, this alone is a machine gun. This alone is legally a receiver. Now, Mr. Clark, not my client, but the man who made the guns at issue, carried this reasoning a little further. If this metal plate is a machine gun, because it carries the serial number and manufacturer, then why couldn't this plate be one? That's what he did. He took other machine guns, he removed this metal plate from their frames, he mounted it in the side plate, thereby to his view making this, if this big plate can be a machine gun, why not that small plate, and he assembled machine guns with it. I'm still at a loss to understand how he or anyone could think would be legal to cut out the number and attach it to an entirely different gun. Well, Your Honor, again, we go back to this understanding, which is documented in the record but not reflected in regulations. If this can be a machine gun, why not a smaller piece, just one flat piece of metal? That's their understanding. With respect, I don't think you're answering Judge Silverman's question. He's wondering how someone can believe that it's appropriate to take the registration number off of one firearm and put it onto another, not what constitutes the firearm. Would you answer Judge Silverman's question to that effect? Yes. I don't know what went into Mr. Clark's thinking, Your Honor. I represent Mr. Rodman, but Mr. Clark concluded this was the case. More than that, he informed my client, Mr. Rodman, that he had in fact secured BATF approval for doing this and that he'd been doing it for 17 years and ATF had never had a problem. Did your client concede that the registration of firearms is a lawful function of the government? I would think it is, Your Honor. Okay. So you concede that? Yes. Okay. But the question is whether you can found a conspiracy on that ground. And I think the conspiracy count we point out fails under the skilling test. It is simply applying the statute in that manner would make it void for vagueness because no person can really understand, given the complexity of the issues involved in this case where a piece of metal is at issue and what an unwritten understanding of the agency understands it to be is at issue, that the count was simply void for vagueness. No one can figure out exactly what would be violated in what way. Counsel, again, I hope we can get back to the registration issue for a moment. In skilling, the problem was that nobody knew what, in quotes, honest services were. It was being applied across the board on almost all kinds of things. The Supreme Court said, no, you can't do that. We're going to narrow it down to more traditional bribery and that sort of thing. But here we're talking about a firearm. Each firearm has a number on it. That's the number that's used by the government to track these weapons. And your client is accused of having sold a gun knowing that the registration had been taken from one firearm and putting it into another. What's confusing about that? I mean, it is certainly, if he understood that there was a requirement, and I gather the record shows that he did, what is confusing about an allegation that it was unlawful to take, to knowingly take a weapon where the registration had been taken from one firearm, put into another, and then sold? What's unclear about that? Well, what's unclear about it, Your Honor, is if you, to determine that that is unlawful, you have to go back and know what are the unwritten positions of BATF. In this case, one which contradicts their public, the Code of Federal Regulations. What aspect of the Code of Federal Regulations does it contradict? The definition of receiver itself, Your Honor, in the ATF regulations relating to machine guns. So you think that, just on its face, that the indictment is deficient because it contradicts the very regulation that it claimed was violated. Is that, in effect, what you're saying? I think that's one aspect of it, Your Honor. I think another aspect is that the indictment claims defrauding the government of its functions and rights in the regulation of machine guns is in accord with two separate titles of the United States Code and two sections of the Code of Federal Regulations. It is something where you're going to have a great deal of trouble figuring out exactly what is charged and where there's a great deal of flexibility as the case goes to trial. The jury instruction dealt with obstructing the functions of the ATF and the NFA branch. So it's somewhat more specific, but the point is you're being charged with obstructing the functions of a large group of people. And how are you to determine what are those functions? Again, counsel, I think you're kind of analogizing back to the skilling issue again. I believe a moment ago that you properly conceded that the registration of firearms is a lawful function of the government. Yes, Your Honor. The serial numbers or rather the numbers on the firearms are the way in which those are tracked. If your client takes the registration or number from one firearm and puts it on another, that obviously creates confusion in the government records, does it not, as to what kind of firearm it is, who has it, et cetera? Well, it would create no confusion as to who has it. At any time, if the machine gun had been traced, it would have traced back after Mr. Rodman received it to Mr. Rodman. But it's a different gun, is it not, counsel? Pardon? It's a different gun then, is it not? Well, it depends on the same firearm. Well, it looks different. It's bigger. There's no question about that. Let me give an extreme example to show why I'm having trouble with your illustration. Let's say that on the one hand, the initial firearm where the number is is a .30-06, something like that. And the second one is a Howitzer, and you move it over there. Does that make any difference to the government? Same registration number. Does it matter that one is a Howitzer and the other is a .30-06? That might be an extreme enough case. It is extreme, I grant you that. But consider, since this is a machine gun, we can fasten it to take it from a .30-06 machine gun and stick it on any millimeter machine gun, and there's no problem. This is still the registration. For us to rule for you, we would have to decide as a matter of law that somebody can cut a serial number off of one gun and attach it to another gun. Is that right? No, Your Honor. And I think it would be enough to say that under these conditions, the indictment itself is vague. If we say, as Judge Smith suggests, it's not vague, then is your goose cooked then? On this count, I think, Your Honor. But there is one additional aspect, which is there was no impact on the regulatory function. My time is running short, but if you look at our supplemental excerpts, Gary Scheibel, the head of the NFA branch, testifies that he didn't know what this type of gun was. So he's maintaining the records for the government, and he could apparently maintain them without knowing what a Hatton S701 is. He had no idea whether it was indeed a howitzer. Well, he probably knew it wasn't a howitzer, but he had no idea what was going on. So they could maintain the regulatory effects without ever knowing what the gun looked like. Was that because he hadn't looked at the form, or because the government doesn't care? It's because essentially the government doesn't care. But normally when you look at the form, you can tell what type of weapon it is, can you not? I believe it would say machine gun on it. Okay, and there's no greater specificity? Well, it would have the maker and the model number. Right, and so if you knew that, then you would pretty much know what it was, right? Yes, Your Honor. So if somebody really wanted to look at the government record and parse the subparts, you could tell with great specificity what kind of gun it was, what its capabilities are, how long it is, how big the barrel is, what kind of arm, all that, right? And what's important is my client, when he received the Form 3s from ATF, they reflected all that. It says that this Hatton now has a 22-inch barrel, 36 inches overall, and .30 caliber, .30-06 to be precise. And at the bottom of the form, a government form that was issued to my client, it reads, by authority of the director, this application has been examined, and the transfer and registration of the firearm described herein and the interstate movement of that firearm to the transferee are approved. So Mr. Rotman had in hand with each gun, that's in our excerpts, page 49, a government permit entitling him to have the thing describing the gun exactly as it now was. Well, that's not my understanding. My understanding is that what was approved was the transfer of what was thought to be the gun on which the registration was previously affixed. But what you've got is a new firearm with the old registration affixed. Isn't that correct? Your Honor, if you look at the registration form, it says 22-inch barrel, 36 inches overall. So ATF had knowledge of what this was. Nobody cared. The man who was registering just knows it's something called a Hatton. And the testimony is that he didn't know what one of them was. I don't want to interrupt your train of thought, but I do have one very quick question, and that has to do with the wire and mail fraud account. Everyone seems to agree that property has to be involved here, or you've got two cases that say it doesn't work. Yes, sir. On the other hand, if you look at the indictment on its face, it covers much more than what the government apparently erroneously conceded in its reply brief. Do you agree that we really in this case look to the indictment and what the indictment says in terms of what would be covered on the theory that anything in the record can support an affirmation? I think, Your Honor, we have to look at the fact that the jury instructions were wide open. They were simply property. Did he defraud someone of property? You think that the jury instructions were basically of a piece with the government's error regarding the allegation about property. Is that correct? I think that is the related problem. And if you compare the jury instructions in U.S. v. Pellisman 641 F3D 399, you'll see what a proper set of jury instructions is like. It's much more specific as to what was supposedly the object of the fraud. Here we don't have that. It went to the jury on property. And the prosecution in their closing argument stressed the property is getting the Form 3s, which is not permissible under those cases. Mr. Hardy, I want to make sure you leave time for co-counsel. Oh, certainly, Your Honor. Thank you. Good morning. Good morning, Your Honors. Thank you. I'm Stephen Shannon for Iden Greenberg. And I would like to leave two minutes, if possible, for rebuttal. About six minutes left. Thank you, Your Honor. I would like to address the sufficiency of evidence issue in these terms. Examining the government's response brief and comparing that to the record, the closing by Mr. Vann, we can see that the sufficiency was of, in the government's view, was based on Mr. Kalish's testimony. In his testimony, he describes two overt acts which were used to connect Mr. Greenberg to the conspiracy. Those were, in 1999, a Clark gun and a 2003 transfer from, I believe, Mr. Kalish to Mr. Greenberg. And Mr. Kalish testified that he informed, at the very least, that he informed Mr. Greenberg of this method of manufacture and would not have sold him a gun unless it was manufactured in this fashion. The problem I have with this is when did this take place? Because in the record, we can see that in 2006 was when the ATF first was, their fancy was tickled by this method of manufacturing. They started inquiring. We know that this was not public information because Mr. Scheibel testified, as did Mr. Vasquez, that they did not publish this. And Mr. Scheibel also testified that he would have gotten in trouble if he had revealed this or notified anybody, especially involved in this case, because it would be material. So the issue is reliance. We're going now to what the government characterized, I believe correctly, as the defense theory of the case, which was entrapment by estoppel, whether the reliance by Mr. Greenberg on the, shall we say, the statements by Mr. Kalish that he testified to were reasonable. Are there any cases that you can refer us to where the estoppel concept was applied to governmental agents dealing with firearms? Your Honor, I would have to research that. I don't have anything at my fingertips. Okay. I probably need some authority on that, but I'm coming up dry on that one. So I guess you're saying that as a matter of fairness that if a governmental agent says what is alleged to have been said, that your client ought to have the right to rely on that. Is that your point? That is correct, Your Honor, but I would go further than that. Your what? I would go further than that, Your Honor. And what I would say is it's when Mr. Kalish talked to and allegedly said to Mr. Greenberg, this is not only is this method of, this is how it's manufactured, by marrying these two pieces, and therefore under the ATF guidelines is a new manufacturer subsequent to the 1986 NFA Act. He then informed the court under direct examination that he said that this is illegal in his opinion. And what I'm suggesting is that when he said this to Mr. Greenberg, the timeline dictates that this was years before it was actually considered by the ATF to be illegal. Was Kalish a licensed federal? He was, Your Honor. And so was Greenberg? That's correct, Your Honor. So how does Greenberg have any more right to rely on Kalish than Kalish has to rely on Greenberg? I mean, they're both on equal footing, aren't they? Well, in the sense of that, they are on equal footing. However, it's Mr. Kalish that testified that he specifically and explicitly told Mr. Greenberg that this was illegal. Well, so what? The timeline dictates that he told him this years before the ATF even considered this issue. Okay, so you're down to two minutes. Thank you, Your Honor. Thank you. Good morning. Good morning. May it please the Court, my name is Don McLanza. I represent the United States. Before I delve into the merits and start addressing some of the merits issues, I want to again thank you. We've got to get the clock going. There we go, thank you. I want to again thank the Court for giving our office the opportunity to submit corrected briefs. We apologize for any time that was wasted or confusion that was brought about by the errors in our initial brief. It wasn't up to our usual standards, and we apologize. You've learned from your mistake, I take it. And to that end, I also wanted to note that in preparing for argument, we have a citation to the Licardi case on pages 22 and 23 of our response brief in the Rodman matter, and the parenthetical there is inaccurate. So I wanted to point that out as well. It doesn't affect the outcome here, but I wanted to make sure that was clear. While we're talking about that, I'd be interested to know the government's position with respect to the wire fraud count. You conceded that based upon the McNally case and I forget the other one, that there's no property involved in the, at least the way the government described it in its initial reply brief, that it can't stand. On the other hand, you have an indictment that goes well beyond the property concept. Is it the government's position that we can still affirm, or are you conceding that that has to drop out? The court has discretion to go either way on it. It would be fair for the court to find that because of how we phrased our argument in our answering brief, as Judge Sheldon put it earlier, our goose is cooked on those counts. But the court also has discretion, particularly under the standard of review here, where the defense didn't even raise a Rule 29 challenge at trial, so this is plain error review. It certainly wouldn't result in a manifest injustice to uphold convictions on counts where the evidence clearly supports them, but for inartful phrasing in an appellate brief, the evidence would clearly support the convictions. If this were an equipoise, since this is a criminal case, would not equity suggest that we should err on the side of the defendant here? I think you should. I think that the way we phrased it in our letter brief is those cases likely compel reversal here. I also think if the court were to affirm the other substantive counts as we've asked it to do, we've already conceded that the case should be remanded for resentencing. Right. So the reversal of these counts won't ultimately have really any practical effect on the ---- So, in effect, what I understand the government to be saying is that you're okay, that we just overturn the mail fraud counts. You already conceded the resentencing requirement, and in the scheme of things an appropriate punishment from the government's perspective would be meted out based upon the other counts of conviction, assuming those are upheld. Exactly. Okay. Thank you. While you're being interrupted, I have some concern about the enhancement count, because I understand that the government is confessing error. Correct. Now, in your confession, you indicate the matter should be remanded. Now, the matter could be just the enhancement or it could be the entire sentence. What's this that was given? What's the position of the government? I think that this Court's typical rule is that whenever it remands for resentencing, even if it's remanding simply because of an isolated guidelines error, it remands on an open record and allows the district court to consider the whole sentencing package in front of it. So by the matter, you mean the entire sentence. Correct. Vacate the entire sentence. I just wanted to be sure. Correct. I want to talk briefly, now that we've addressed those points. I think it's most helpful to start by distilling for both Mr. Rodman and Mr. Greenberg the four pieces of evidence or categories of evidence from which this jury easily could have concluded that they knew full well what they were doing was deceptive in defrauding the ATF and that they were therefore committing both a conspiracy under the defraud clause of 371 and the substantive counts. Turning first to Mr. Rodman, his defense at trial was he knew full well what was going on, but he believed that this was a lawful manufacturing technique and he therefore couldn't have had the mens rea to commit these crimes. And there are several pieces of evidence from which the jury could have rejected that self-serving view and found that beyond common sense that the court has already reflected, this obviously looks illegal, that Mr. Rodman directly knew that this was, in fact, deceptive and not allowed under the rules. First, there was testimony from Mr. Goldstein that in 2003 at the shoot at Knob Creek, Mr. Goldstein, excuse me, Mr. Clark, told Mr. Rodman not to tell customers precisely how Clark was manufacturing these guns because, quote, he didn't want the ATF to catch on. Again, that's the precise opposite of Mr. Clark assuring him that this was a lawful technique with no questions about it. I gather, counsel, that the government's position is that what you've just recited and others that are listed in the brief was more than enough for a jury to hear what was said on the other side and what the government's witnesses decided and make a decision in Jackson or its equivalent controls here. That's all we're talking about. Is that right? That's correct, Your Honor. And so I won't go through the rest of the Rodman evidence. That's our position with respect to Mr. Rodman. Mr. Greenberg's position was actually, based on how Mr. Greenberg testified at trial, ended up being very different than Mr. Rodman's position. Mr. Greenberg took the stand and said, I had no clue the guns were being manufactured like this. I was duped just like these other customers who bought these guns without knowing Mr. Clark's actual manufacturing method. And what's notable is that Mr. Greenberg actually conceded during cross-examination that had he known what Clark was doing, he would have been very hesitant about proceeding with these purchases. He said it could cause problems and one would need prior approval from the ATF before going ahead. That's on SER 2, pages 1662A through B. So this is really the opposite of Mr. Rodman's defense. And having hung his hat on the defense that he didn't know how these guns were manufactured, well, there was a wealth of evidence showing he didn't know how they were manufactured. In addition to Mr. Kalish's testimony about that, Mr. Clark's testimony about that, we also have evidence from Special Agent Sander who testified that when he interviewed Mr. Greenberg in 2009, before the search warrant, Mr. Greenberg actually lied to him several times during that interview. Again, which is evidence from which the jury could infer consciousness of guilt in the requisite mens rea. Last point I want to touch on, on the conspiracy count. I want to turn away from the facts and a little bit to the law. The legal theory in this case falls comfortably within the contours of the 371 defraud statute that this court has established long ago. The two best cases for us are the Toohey case and the Vollmer case. Toohey was a case where the defendants were charged with defrauding the FDIC by obtaining control of a bank while willfully evading the reporting requirements that would show that they were actually controlling the bank. In that case, they didn't even make any false statements to the FDIC. They just took steps to not report what was actually going on. And the underlying regulatory scheme wasn't even criminal in nature. It was a civil regulatory scheme. Notwithstanding all of that, this court in Toohey held that that type of conduct, when you're defrauding the government, the federal government of its regulatory functions, that is a crime under the 371 clause. Here, obviously, the case doesn't even start to go out to the outer bounds of 371. This wasn't simple evasion. There were direct false statements being made to the ATF, and the underlying regulatory scheme that was being impeded itself is punishable by criminal penalties, not civil penalties. I wonder if you'd discussed the equitable estoppel argument. Equitable estoppel? Particularly the Batterjee cases. Yes. Equitable estoppel. The primary reason we went on this is because Judge Silver gave an equitable estoppel jury instruction. Well, she gave a variant of what they asked for, but she left out the key part that these federal firearms licensees can be federal agents, didn't she? She didn't say they couldn't be federal agents. It was the jury instruction simply said that the advice had to come from an authorized official. I believe at the charge. Right, but the linchpin of this is that these guys as licensees are, in fact, authorized government officials, which is what they requested she do and which she declined to do. And under Batterjee, under some circumstances, these licensees can indeed be authorized officials. And I think Batterjee is distinguishable for several reasons. First of all, Batterjee, the federal firearms licensee who gave the inaccurate advice, wasn't alleged to be a conspirator in the underlying scheme to defraud. Batterjee went into a gun store, said he wanted to buy a gun. The FFL didn't understand that the rules had recently changed about whether non-immigrant aliens could lawfully purchase guns and told him it was okay for him to purchase given his lawful status. Here we have something totally different. We have Greenberg and Rodman purporting to rely on Mr. Clark, who is himself part of the scheme to defraud. That's an easy distinction with Batterjee and Tallmadge. And a separate distinction in those cases. I don't quite get what the distinction is. I mean, they're conspirators because you allege they're conspirators, but if Rodman says I relied on Clark, who seems to know what he's doing, and he's one of these licensees, what difference does it make? That would be like, to take that logic to its conclusion, that would be if you had a case where a private citizen bribed a federal official and the two of them were charged with conspiracy to commit bribery, and he said, oh, well, the federal official asked for the bribe, therefore I'm entitled to entrapment by estoppel because he's a federal agent. That obviously wouldn't fly. The equities are totally different when the government's allegation that the jury accepts a trial is that the firearms licensee was himself knowingly acting as part of a fraud scheme. Isn't that, at least as I understand it, isn't that the government's primary defense on the estoppel count, i.e., that say under the Chen case, if a defendant knows something is unlawful, he or she cannot rely on something said by a governmental official based on an estoppel principle. Is that correct? Correct. And so to a different way of phrasing that for how this case can be affirmed is, we think that Judge Silver's instruction was lawful, and arguably she wasn't even required to give any instruction because of how the facts came in. Batterji and Talmadge are not jury instruction cases. They're cases that reversed on due process grounds convictions because they found that the stipulated or undisputed facts show that the FFL had given this affirmative advice and the reliance had been reasonable. Here, the evidence that I was just talking about where Mr. Clark is told, excuse me, Mr. Rodman is told in 2003 by Mr. Clark, don't advertise this. We don't want the ATF catching on. And then Mr. Rodman himself writes a message board post in 2007 warning others not to spill the beans to the ATF because of what can happen. In Mr. Greenberg's case where he too is, there's evidence that he knew this was unlawful. The jury was clearly entitled to reject entrapment on the ground that there was no reliance or to the extent there was claimed reliance, it wasn't reasonable. Clearly, the Talmadge case gives you some problems. I know you'd love to have Judge Kaczynski's dissent instead of the majority, and perhaps there's others that feel the same way, but that's the law that governs us. The troubling part about this is that both people have the same amount of knowledge. Now, is there a case, it seems to me that that's a logical distinction here because you're being entrapped by someone who knows more than you do. Right. But if they have an equal amount of knowledge, it doesn't seem to me that it flows. Has there been any case where there's an equal amount of knowledge to the two people involved? I'm not aware of any case. The three or four cases that are decided in the briefs, Talmadge, Batterji, and I believe Brebner, all involve situations where a really unsophisticated, non-licensed gun buyer went into an FFL and there was a real distinction between the knowledge and expertise levels. I can't recall the name, but we cited in our case, it was an illegal immigration case where the defendant purported to rely on an INS form. Again, it was an undocumented alien purporting to rely on advice and forms that were published by much more sophisticated and knowledgeable entities. But there's no case that's made that analysis yet. That's correct. But we're aware of none, so it would be breaking new ground for it to accept the defendant's argument. Yes, if we choose to go that direction. Were the forms essentially the same in this case as they are in Talmadge, or were they different? I think that they were much different. In Talmadge, the cases were, this wasn't a case where the defendants can purport to rely on the advice that was in the forms three and the forms four as showing that their reliance was reasonable. To the contrary, this was a case where they were, the form three didn't tell them it's okay to cut off a serial number and not disclose this is a new gun. They were the ones who came up with it. Would the government then propose a distinction to Talmadge on the basis the forms don't contain similar language? Yes. And would that be your primary argument? I don't know if I'd say it's our primary, because I think that the You'll take anything you get. I'll take anything I can get. But I think that the fact that Clark was a co-conspirator who was on equal knowledge footing with these defendants and the defendants themselves, there was ample record evidence that they weren't relying on this advice, they were actually actively trying to conceal this information from the ATF because they knew that their goose was cooked if anybody found out. Talmadge was a case, it's a very unique case. Talmadge was a case on a stipulated record that went up on appeal where the government stipulated that the FFL had given unqualified affirmative advice to the purchaser that it was lawful and that he had relied on that advice. This case is totally different. Our whole point is they didn't rely on it. They knew full well and the jury accepted that. You put a lot of weight on the fact that they were charged as conspirators. Let me ask you a hypothetical. Suppose you didn't charge them with count one, with conspiracy. You just charged them with count 74, illegal possession of a machine gun. Count 81, receipt of a possession. Count 89, conspiracy is not charged. Then would this defense have any legs? I still don't think so. I think that the fact that we charged him as a conspirator helped support our argument. We didn't take the conspiracy part out of it. But you still, I think the court would still want to look to the underlying facts and see that irrespective of how the indictment was charged, what was Clark's actual role in this? Was he somebody who was independently, didn't have anything to do with the scheme and was just inadvertently administering advice? Or was he somebody who was all wrapped up in it and profiting from the very advice? What I'm trying to get at is thinking how we would write this up. And if we take the conspiracy part out of it, can someone else down the road who's charged with illegal possession or illegal receipt of a firearm say that a guy like Clark told me that it's okay to do this? There's no conspiracy charge involved. He potentially could argue that, and then it would depend on the facts of was the reliance reasonable? Did the FFL? He would get an instruction, you think? It's not clear to me that this is even an instruction issue. The cases go back and forth on it. Again, Batterji and Tallmadger cases where the court reversed convictions on the merits because they found that as a matter of due process, this shouldn't be the type of thing that could result in a conviction. And that due process analysis involves the sorts of policy weighing considerations that one could argue really aren't things that are meant for juries to weigh. These should be judicial decisions. We need to get into this in this case because we've got with Timmons and Brebner and Chen, among others, traditional estoppel concepts that if they must have to rely on it and that reliance has to be reasonable. In this case, the government claims that it has proven that the parties involved here knew perfectly well this was not true. Right. And under the circumstances, under any set of at least the existing case law, there is no estoppel if that's true. So would it be your view that rather than tackle this issue if it were to go this way, that one would just rely upon existing law to show that there was in fact knowledge here and that no estoppel could be asserted properly because there was no reliance because they knew it wasn't true? I think that's a very narrow way to resolve this case. One further point I'd add to even further narrow it is I think the narrowest way the court could affirm on this is to say, the defense's proposed instruction on estoppel, everybody agrees, was legally false for several reasons.  It didn't have any requirement whatsoever about the full divulging of all historical facts that might bear on the analysis. And this court's usual precedents relating to jury instructions are, the court's not required to give a proposed special instruction when the law is screwed up in the proposed instruction. Here, the court accurately rejected the defenses and ended up giving an instruction that our position is, arguably they weren't even required to give, but even if the defense takes some issue with it, because their own proposed instruction was faulty, the court can affirm on that basis. If there aren't any other questions, thank you very much. Just one little tag on this thing. Were we to engage on the estoppel issue, is this a situation like somebody calling the IRS and asking for advice and they can't rely on it? Or is this one where, in the proper circumstances, someone could appropriately rely upon what a governmental agent said was legal? I think in proper circumstances they could. I think it would be too far for us, based on what Talmadge and Batterji say, to say that that can never happen. It just didn't happen here. Okay. You mentioned that's a due process issue in that one, right? Correct. Okay. All right. Thank you. Thank you, Mr. Lanza. Who's going to do the rebuttal? Mr. Hardy. Your Honors, on the matter of entrapment by estoppel, the United States has suggested both parties were on the same ground. They were both FFLs. That may be correct, but I think there are certain important distinctions here. The first is that Mr. Clark was actively manufacturing and therefore dealing with ATF. A purchaser doesn't have to do with ATF. The seller does. But what's really critical is the Form 3s. He could show you, the seller files for the Form 3, gets it, receives it, and then he transfers the firearm to you. And here is the Form 3 he's handing you, signed by an, I quote, authorized ATF official saying he can transfer this gun. He told Mr. Rodman that for 17 years he'd done this and he had no problems. So he's being informed based on Clark's 17-year experience, documented by paper issued by the government, that this is okay. Mr. Rodman, he's an automobile mechanic operator, an operator of an auto repair shop. He's not a lawyer. He's a grandfather, 61 years old. This is a part-time consideration for him. And someone who claims to be an expert, speaking on behalf of the government, with government paperwork to back him up, tells him this is lawful. Kennedy. Counsel, let's ask you this. I have understood that argument. That's the first argument you made. But the government is looking at the Tomage case and has indicated in argument here that because that Tomage cost placed an affirmative duty on the seller in the form that's required, an affirmative duty of the seller to determine the lawfulness. And there's no such in this case as there was in Tomage. And they're saying, therefore, Tomage doesn't apply. What's your response? I think my response would be, Your Honor, that the test here, when we get down to is this lawful, it's not just Mr. Clark saying this is a lawful transaction. It's the government itself sending him the form that he can present to Mr. Rodman to show it. But if there's no restrictions placed on the government, as there were in Tomage, then where are we? Your Honor, there are restrictions. In the National Firearms Act, which we discuss in the brief, there is a specific statute that says a permit may not be issued if it would put the recipient in violation of law. Come back to my point, if you would. The point was made that we can distinguish Tomage, this is what the government asked, based upon the affirmative duty. Is there different? And that doesn't exist in this case. Well, Your Honor, I think in addition, in this case it does, because a machine gun is also a firearm. So you have the dealer has to be in compliance with the regular Gun Control Act, which is what applied in Tomage, as well as in compliance with the National Firearms Act. Okay. That's your answer? Yes, Your Honor. Mr. Jim, anything else? Thank you, Mr. Hardy, Mr. Lanza, Mr. Maynard. Thank you. The case just argued is submitted.
judges: Wallace, Silverman, Smith